CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
FEB 2 5 2009
JOHN F. CORCORAN, CLERK
BY: /s/ DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| GEORGETTE R. ASBURY, | ) |
| Plaintiff, | ) Civil Action No. 7:08CV00272 |
| v. | ) **MEMORANDUM OPINION** |
| CITY OF ROANOKE, | ) By: Hon. Glen E. Conrad |
| | ) United States District Judge |
| Defendant. | ) |

The plaintiff, Georgette R. Asbury ("Asbury"), proceeding pro se, filed this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-5 ("Title VII"), asserting claims of disparate treatment, retaliation, and discriminatory discharge stemming from the termination of her employment by the Roanoke Fire-EMS department in December 2006. The defendant has now filed a motion for summary judgment, claiming that this action should be dismissed because it was not timely filed. For the reasons set forth below, the defendant's motion for summary judgment shall be granted. The plaintiff has also filed a motion to compel which will be denied as moot.

## FACTUAL BACKGROUND

The plaintiff was originally hired by the Roanoke Fire-EMS department as a firefighter and emergency medical technician in June 1997. Asbury was consistently promoted over the years up to the rank of Acting Captain at the Roanoke Fire-EMS Station #4 and was, in early 2006, the highest ranking female in the department.

When she was off-duty, Asbury frequently volunteered as a tactical paramedic to the Drug Enforcement Agency ("DEA"). On July 10, 2006, Asbury was contacted in this off-duty

capacity by an agent of the DEA to come to the DEA office in Roanoke and perform a medical evaluation of a suspect. After evaluating the suspect, Asbury determined that he needed certain medications and contacted Dr. Kevin Broyles, who was an Operational Medical Director for the DEA as well as an Assistant Operational Medical Director for the Roanoke Fire-EMS department. Asbury alleges that Dr. Broyles gave her permission to use a drug box from one of the Roanoke Fire-EMS stations. After taking the box and using the supplies to treat the suspect, Asbury took the used drug box to Carilion Roanoke Community Hospital where she exchanged it for a fresh box from Dr. Broyles. Asbury then returned the unopened drug box to the Roanoke Fire-EMS station.

On that same day, Acting Chief William Altman ("Altman") inquired about the status of the drug box and asked Asbury to complete a written report on her actions. Asbury turned in a report the next day to the DEA, but not to Altman. After Altman requested a copy of the report, Asbury informed him that it was the property of the DEA and that they would not release the report to him. On July 21, 2006, Altman and other department officials informed Asbury that she was being demoted to lieutenant for taking and using department equipment without permission and for failing to obey Altman's order to provide a report on her actions. Asbury immediately initiated Step I of the internal grievance procedure to appeal her demotion.

On July 27, 2006, Asbury participated in a Step II administrative grievance meeting with department officials who again asked her to write up a report of her actions. Asbury claims that she provided a report to the Roanoke Fire-EMS department the following day, after first getting permission to do so from the DEA. Asbury then pursued her grievance to the final step, a panel hearing before the Personnel and Employment Practices Committee. The panel found that the

2

charge of taking a drug box without permission was unfounded, but that the charge of failing to obey a reasonable order by declining to provide the requested report on a timely basis justified her demotion. Asbury claims that she was subjected to these charges, and the resulting demotion, because she is a female and that department officials lied in stating that she had taken longer to provide a report than had actually been the case.

Asbury later met with Carolyn Glover, in the City of Roanoke's Human Resources Department, on October 2, 2006. She informed Glover that she wanted to file a grievance based upon the disciplinary action taken against her because she believed that male employees had violated similar department policies but had not been subjected to similar discipline. Asbury also wanted to file a grievance for disparate treatment because Altman had ordered her battalion chief and Captain not to allow her to work as a Rescue Supervisor, even though the plaintiff believed she was qualified for the position. On October 5, 2006, a Roanoke Fire-EMS department official informed Asbury that she was not being allowed to work as a Rescue Supervisor because the department still believed she had violated department policy by taking the drug box without permission, even though a panel had cleared her of this charge.

Later, in November 2006, Asbury took part in promotion testing and was ranked number two on the list of candidates for the position of First Lieutenant. Nevertheless, she was not promoted. Rather, three white males who were ranked lower than Asbury received the promotions. Her supervisor allegedly informed her that she was not promoted because the department did not have confidence in her leadership skills.

3

On December 12, 2006,[1] Asbury was placed on administrative leave for stealing needles and syringes from the medical supply closet training materials bin at Roanoke Fire-EMS Station #1 on November 1, 2006. Two days later, Asbury's employment was terminated, although she vehemently denied the charges against her. The plaintiff now claims that the reasons given for her termination were false and pretextual and that the real reason was that she is female. Asbury claims that she suffered retaliation, disparate treatment, and a discriminatory discharge and has experienced mental anguish, humiliation, embarassment, and wage loss and has incurred legal fees and other costs. Asbury seeks compensatory damages of $3,000,000 and punitive damages of $300,000, as well as attorneys' fees and costs (although she is proceeding pro se in this matter).

Asbury filed a charge of discrimination related to her demotion and subsequent termination with the EEOC on December 22, 2006. A right to sue notice was later issued by the EEOC and mailed on December 31, 2007. In her amended complaint, the plaintiff states that she received the right to sue notice on January 16, 2008. Asbury filed her original complaint in this matter on April 7, 2008, ninety-eight days after the date the EEOC mailed her right to sue notice. The defendant has now filed this motion for summary judgment, claiming that Asbury failed to file her complaint within the ninety day time period specified by 42 U.S.C. § 2000e-5(f)(1). The plaintiff has filed a motion to compel, claiming that the defendant has failed to properly respond to her discovery requests. The parties appeared before the court for a hearing on both of these motions, and the motions are now ripe for review.

---

[1] The date given for this incident in Asbury's amended complaint is December 12, 2008. In her EEOC charge, however, Asbury listed the relevant date as December 12, 2006. Given that the amended complaint was filed in July 2008, the dates in the amended complaint appear to be misstated.

4

## STANDARD OF REVIEW

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is properly granted if "there is no genuine issue as to any material fact and the . . . moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). For a party's evidence to raise a genuine issue of material fact to avoid summary judgment, it must be "such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In deciding a motion for summary judgment, the court must view the record in the light most favorable to the non-moving party. Terry's Floor Fashions, Inc. v. Burlington Industries, Inc., 763 F.2d 604, 610 (4th Cir. 1985). When a motion for summary judgment is supported by affidavits or other evidence as provided for in Rule 56, the opposing party may not rest upon the allegations in the pleadings and must, instead, present evidence showing that there is a genuine issue for trial. If the adverse party fails to present such evidence, summary judgment, if appropriate, should be entered. Fed. R. Civ. P. 56(e); Atkinson v. Bass, 579 F.2d 865, 866 (4th Cir.), cert. denied, 439 U.S. 1003 (1978).

## DISCUSSION

In order for a plaintiff to pursue a civil action under Title VII, the Act provides that a plaintiff must bring suit within ninety days after the EEOC provides a right to sue notice to that plaintiff. 42 U.S.C. § 2000e-5(f)(1).[2] The notice provided by the EEOC states that such a suit must be filed within ninety days of the plaintiff's receipt of the notice. If a plaintiff does not file

---

[2] Specifically, the statute provides that "the Commission, or the Attorney General in a case involving a government, governmental agency, or political subdivision, shall so notify the person aggrieved and *within ninety days after the giving of such notice* a civil action may be brought against the respondent named in the charge [] by the person claiming to be aggrieved." 42 U.S.C. § 2000e-5(f)(1) (emphasis added).

5

suit within the ninety day period, she will forfeit her right to pursue the claim. Darden v. Cardinal Travel Ctr., 493 F. Supp. 2d 773, 775 (W.D. Va. 2007) (citing Baldwin County Welcome Ctr. v. Brown, 466 U.S. 147, 149-50, 104 S. Ct. 1723, 80 L. Ed. 2d 196 (1984)). This timing requirement is strictly construed. See Lewis v. Norfolk S. Corp., 271 F. Supp. 2d 807, 811 (E.D. Va. 2003); Harvey v. City of New Bern Police Dep't, 813 F.2d 652 (4th Cir. 1987) (finding a suit filed ninety-one days after the claimant's wife received the notice was untimely).

Some courts have held that the ninety day statutory period begins to run only upon the claimant's actual receipt of the right to sue notice. See, e.g., Archie v. Chicago Truck Drivers, Helpers & Warehouse Workers Union, 585 F.2d 210, 216 (7th Cir. 1978). The United States Court of Appeals for the Fourth Circuit, however, has explicitly rejected this "actual receipt" rule. Harvey, supra, 813 F.2d at 653-54 (4th Cir. 1987). Instead, the Court has adopted a flexible rule which requires a district court to "conduct a thorough examination of the facts to determine if reasonable grounds exist for an equitable tolling of the filing period." Id. at 654. The limitations period otherwise will begin to run on the date of constructive receipt of the notice, i.e., the date of delivery, "if the date of delivery and the date of actual receipt are substantially different." Darden, supra, 493 F. Supp. 2d at 775. See also, Watts-Means v. Prince George's Family Crisis Ctr., 7 F.3d 40, 42 (4th Cir. 1993) (holding that "the limitations period is triggered when the Postal Service delivers notice to a plaintiff that the right-to-sue letter is available for pickup, and not when the letter is actually picked up"); Harvey, supra, 813 F.2d at 654 (finding that the delivery of the notice to the plaintiff's home where it was received by the plaintiff's wife triggered the limitations period even if the plaintiff did not receive the letter until five days later); Graham-Humphreys v. Memphis Brooks Museum of Art, Inc., 209 F.3d 552, 558 n. 11 (6th Cir.

6

2000) ("a Title VII claimant has constructive notice of his or her right to litigate on the day that the post office has delivered the RTS letter to his or her *correct* address, even though the claimant had not actually received that writing until a later date") (emphasis in original).

In this case, the City received its copy of the right to sue notice in Asbury's case on January 2, 2008, only two days after it was mailed from the EEOC office in Richmond, Virginia. See Declaration of Susan Johnson. The defendant has also submitted the declaration of Willis M. Day, the Postmaster for the United States Post Office in Check, Virginia. In that declaration, Day states that he is not aware of any letter taking sixteen or more days to be delivered from Richmond to Check, Asbury's place of residence; that letters mailed from Richmond to Check usually take two to three business days to arrive; and that Asbury had never complained about not receiving her mail on a timely basis. See Declaration of Willis M. Day.

The City argues that these facts, combined with the plaintiff's allegation in her amended complaint that she did not actually receive the right to sue notice until January 16, 2008, should result in a finding that there is a dispute with regard to the date Asbury received her right to sue notice. If the parties do dispute the date of receipt, a court "will presume receipt three days after mailing." Williams v. Enterprise Leasing Co. of Norfolk/Richmond, 911 F. Supp. 988, 991 (E.D. Va. 1995). See also, Fed. R. Civ. P. 6(d). The defendant contends that, applying the presumption in this case and allowing for the New Year's holiday, the plaintiff would be presumed to have received the notice on January 4, 2008. Her complaint was filed ninety-four days after this date which, according to the City, renders her claim untimely under the statute.

The plaintiff has filed a response coupled with a declaration regarding her receipt of the

7

right to sue notice.[3]  The plaintiff responds that she left Virginia on December 29, 2007 to travel to Nicaragua as part of an International Studies class offered through the University of Virginia. Asbury returned to Roanoke on January 15, 2008, spending that night at her mother's house, and then traveled to her home in Check on January 16, 2008, receiving her right to sue notice on that same day.  Therefore, Asbury contends that her complaint was, in fact, timely, as she filed it eighty-two days after the date she actually received the notice from the EEOC.

In support of her argument, the plaintiff cites several cases from other circuits which have held that the ninety day period commences on the date of actual receipt.  See, e.g., Bowens v. Big K-Mart Corp., 117 F. Supp. 2d 288, 289 (E.D.N.Y. 2000) (holding that "[t]he 90-day period begins to run on the date the plaintiff or someone at her residence receives the right-to-sue letter"); Biester v. Midwest Health Services, Inc., 77 F.3d 1264, 1267 (10th Cir. 1996) (holding that the statutory limitations period "commences on the date that the complainant actually receives the EEOC right to sue notice").  However, the Fourth Circuit has explicitly rejected the actual receipt rule employed in those cases, as previously stated.

The plaintiff also maintains that the date of her receipt of the right to sue notice is not in dispute in this case because the defendant has not presented any evidence to show that she

---

[3] The defendant argues that the court should not consider either the plaintiff's written response or her declaration regarding her receipt of the right to sue notice because they were filed late.  The Roseboro notice sent to the plaintiff on December 11, 2008 required Asbury to respond to the defendant's motion within twenty days, or by January 5, 2009, allowing three days for mailing.  Asbury filed her response on January 7, 2009, two days past the deadline stated in the notice.  The plaintiff responds that she did not receive a Roseboro notice and that this issue is not addressed in the pro se handbook which is distributed by the Clerk of Court.  The court does not believe that a two day delay in the pro se plaintiff's response has caused any prejudice to the defendant in this case.  Nor does this short delay, considering the plaintiff's apparent confusion with regard to the filing requirement, appear to indicate disrespect to the court or a willingness to flout the court's procedural rules.  See also, Fed. R. Civ. P. 6(b)(1)(B) (permitting the court to extend the time after the expiration of a specified time period upon the party's motion "if the party failed to act because of excusable neglect").  Therefore, the court will consider the plaintiff's submissions in response to the defendant's motion for summary judgment in forming its opinion in this matter.

8

received the notice on any day other than January 16, 2008, the date she returned to her home after her overseas trip. Therefore, Asbury concludes that the three day mailing presumption should not apply in her case, and the court should find that the ninety day time period began to run from the date of her actual receipt of the right to sue notice. The court finds, however, that Asbury has misunderstood the meaning of "dispute" in this context. The date of delivery to the address provided by the plaintiff to the EEOC is the only relevant date of receipt under Fourth Circuit case law, as previously set forth. Because the date the right to sue notice was actually delivered to Asbury's address in Check is unknown, the three day presumption will apply in this case, starting the clock, for limitations purposes, on January 4, 2008.

The facts involved in this case bear a remarkable similarity to those described by Judge Jones in Miller v. Bristol Compressors, Inc., 2005 WL 3263053 (W.D. Va. 2005). In Miller, the Court rigorously applied the standard set forth in Harvey, supra. The plaintiff's right to sue notice had been mailed on May 31, 2005, however the plaintiff stated that he did not receive the notice until June 5, 2005, the date his family returned from a vacation. 2005 WL 3263053, at * 1. The Court first noted that the date the letter actually arrived in the plaintiff's mailbox was in dispute because it was unknown. Id. at * 3. Therefore, the Court applied the three day presumption pursuant to Federal Rule of Civil Procedure 6(e), now Rule 6(d), and found that the letter was received on June 3, 2005. Id. The Court then concluded that the plaintiff's suit, which was filed on the ninety-first day after the receipt of the letter in his mailbox, was not timely filed. Id. Finally, the Court also held that there were no grounds in the record which would support equitable tolling and that "once the plaintiff had actual notice of the right-to-sue letter, there was still ample time in which to properly file the lawsuit, which his lawyer simply failed to do." Id.

9

Similarly, in Sanderlin v. La Petite Academy, Inc., 637 F. Supp. 1166 (E.D. Va. 1986), the plaintiff's husband signed for and received her right to sue notice at the plaintiff's home, however, the plaintiff was on vacation and did not receive the notice herself until three days later. 637 F. Supp. at 1168. The plaintiff then filed suit ninety-two days after the notice was received by her husband at her residence, but eighty-nine days after she received it upon her return. Id. The Court held that the ninety day period commenced upon the receipt of the notice by the plaintiff's husband at the address provided by the plaintiff. Id. at 1171. Furthermore, the Court found that there were no reasons which would support equitable tolling as the plaintiff received the notice within three days after its arrival at her home and gave no explanation as to why she did not file suit within the remaining eighty-seven days. Id. Therefore, the Court held that her action was not timely. Id. See also, Watts-Means, supra, 7 F.3d at 42 (holding that the limitations period was triggered when the Postal Service delivered notice to the plaintiff that she could pick up the right to sue letter rather than when she actually did pick up the letter five days later).

Asbury also was out of town at the time the right to sue notice was delivered to the address she had provided to the EEOC. Like the plaintiffs in Miller and Sanderlin, she actually came into physical possession of the notice upon her return several days later. In a like view, the court finds that the date of receipt of the right to sue notice in this case should be counted as January 4, 2008, three days after it was mailed to the plaintiff's residence plus an additional day to allow for the federal New Year's holiday. Therefore, the ninety day limitations period expired on April 3, 2008, rendering the plaintiff's suit filed on April 7, 2008 untimely.

Nevertheless, as alluded to in the court's description of the holdings in Miller and

10

Sanderlin, supra, the ninety day limitations period is subject to equitable tolling. Beale v. Burlington Coat Factory, 36 F. Supp. 2d 702, 704 (E.D. Va. 1999). Equitable tolling is an extraordinary form of relief which is granted sparingly. 36 F. Supp. 2d at 704. It will be appropriate "where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96 (1990). Other circumstances where equitable tolling of the ninety day period might be justified may include: (1) where the plaintiff has received inadequate notice; (2) where a motion for appointment of counsel is pending and equity would justify tolling the statutory period until the motion is acted upon; or (3) where the court has led the plaintiff to believe that she had done everything required of her. Baldwin County Welcome Center v. Brown, 466 U.S. 147, 151 (1984).

In this case, the defendant contends that equitable tolling is not appropriate. The plaintiff responds, however, that she is entitled to equitable tolling on two grounds. First, in her original response to the defendant's motion for summary judgment, Asbury contends that she could not have known that the EEOC would mail her right to sue notice during the period of time while she was out of the country. Asbury also asserts that she did not delay filing her complaint in any effort to prejudice the defendant and that the defendant has not, in fact, been prejudiced in preparing its defense in this case. After the hearing on this matter, the plaintiff filed a letter with the court intended to supplement her original response and the arguments made at the hearing. In that letter, the plaintiff also contends that, as a pro se plaintiff, she had no knowledge, actual or constructive, of the three day presumption or of the rejection of the actual receipt rule by the

11

Fourth Circuit. The court finds, however, that the plaintiff is not entitled to equitable tolling for either reason under the facts of this case.

In Beale, supra, the Court held that the plaintiff was not entitled to equitable tolling, even though he actually received the notice approximately one month after it was constructively delivered to the address he provided to the EEOC, because he was still left with sufficient time, i.e., sixty days, in which to file his complaint. 36 F. Supp. 2d at 705. See also, Harvey, supra, 818 F.2d at 654 (finding that the fact that plaintiff still had eighty-four days after his receipt of notice to file claim was sufficient time in which to act and would not support equitable tolling); Watts-Means, supra, 7 F.3d at 42 (no equitable tolling where plaintiff suspected notice was from EEOC when she received letter from Postal Service to pick up mail and still had eighty-five days in which to file her claim); Sanderlin, supra, 637 F. Supp. at 1171 (no reason supported equitable tolling where the plaintiff could give no explanation for her failure to file suit within the eighty-seven days remaining); Espinoza v. Missouri Pacific Railroad, 754 F. 2d 1247, 1251 (5th Cir. 1985) (holding that the fact that the plaintiff was out of town when the right to sue notice arrived at his residence did not support equitable tolling where he "offered absolutely no explanation for his failure to file suit within the eighty-two day period that remained following his return home").

Likewise, Asbury is not entitled to the application of equitable tolling simply because she was out of the country at the time her right to sue notice is presumed to have arrived at her residence in Check, Virginia. Like the plaintiffs in the above-cited cases, Asbury had sufficient time after her return in which to file her suit, i.e., seventy-eight days until the limitations period expired. The plaintiff stated at the hearing on this matter that she delayed filing because it was a very difficult decision to bring an action against her former employer without legal counsel. The

12

court recognizes that filing suit against a former employer is, indeed, a serious matter requiring a great deal of thought, however, the same can be said of any plaintiff bringing an action under Title VII. This is simply not the type of extraordinary circumstance which would justify equitable tolling of the limitations period.

The court also finds that Asbury's pro se status does not warrant the application of equitable tolling to the ninety day limitations period. Any litigant, whether represented by counsel or not, is required to follow the law. Graham-Humphreys, supra, 209 F.3d at 561. For this reason, "a willfully unrepresented plaintiff volitionally assumes the risks and accepts the hazards which accompany self-representation." Id. As the Supreme Court has stated, the "[p]rocedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants." Baldwin, supra, 466 U.S. at 152. Therefore, a statute of limitations will not ordinarily be tolled based upon mere ignorance of the law for any reason, including lack of counsel. Bluitt v. Houston Indep. Sch. Dist., 236 F. Supp. 2d 703, 718 (S.D. Tex. 2002). See also, Carter v. Jack Daniel's Distillery, 2002 WL 32059015, * 4 (E.D. Tenn. 2002) (holding that the mere fact that the plaintiff was proceeding pro se did not make equitable tolling appropriate).

Nor is a lack of prejudice to the defendant a factor that would warrant equitable tolling in this case. As the Supreme Court explained in Baldwin, supra, "[a]lthough absence of prejudice is a factor to be considered in determining whether the doctrine of equitable tolling should apply once a factor that might justify such tolling is identified, it is not an independent basis for invoking the doctrine and sanctioning deviations from established procedures." 466 U.S. at 152. Because the court has concluded that neither the plaintiff's pro se status nor her absence at the

13

time her right to sue notice was delivered to her residence serve as a basis for equitable tolling in this case, the court also finds that the lack of prejudice to the defendant from Asbury's filing this action a few days after the deadline is not relevant to the determination of equitable tolling.

## CONCLUSION

For the foregoing reasons, the court finds that the plaintiff's complaint is untimely because it was filed after the expiration of the ninety day period set forth in 42 U.S.C. § 2000e-5(f)(1). Furthermore, the facts of this case do not warrant the application of the doctrine of equitable tolling. As a result, the defendant's motion for summary judgment will be granted.[4] The court will also deny the plaintiff's motion to compel as moot.

The Clerk of Court is directed to send certified copies of this memorandum opinion and the accompanying order to all counsel of record.

ENTER: This 25th day of February, 2009.

_____
United States District Judge

---

[4] The plaintiff had also argued that the defendant's motion for summary judgment is inappropriate at this point because discovery was not yet complete at the time the motion was filed on December 11, 2008. The cutoff for discovery was January 16, 2009. The court notes, however, that the defendant's motion is limited solely to the issue of whether the plaintiff's suit was timely. Therefore, any information relevant to this issue was available to the plaintiff at the time she filed her response and even at the time she filed her complaint in the first instance.

14